IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 7, 2006 Session

## C & W ASSET ACQUISITION, LLC, AS ASSIGNEE OF CHRYSLER FIRST FINANCIAL SERVICES CORPORATION v. DONALD H. OGGS

Appeal from the Circuit Court for Monroe County
No. V04324H     John B. Hagler, Jr., Judge

———————————————

No. E2006-01251-COA-R3-CV - FILED JANUARY 30, 2007

———————————————

In this suit for breach of contract, the assignee of a loan agreement alleged that the defendant was in default of the agreement and requested judgment for monies advanced, plus interest and attorney's fees. The defendant denied owing the debt. The trial court found the plaintiff had failed to carry its burden of proof and dismissed the case. Upon our determination that the evidence does not preponderate against the finding of the trial court, judgment in favor of the defendant is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

SHARON G. LEE, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., joined. D. MICHAEL SWINEY, J., filed a dissenting opinion.

James B. M. Hooper, Chattanooga, Tennessee, for the appellant, C & W Asset Acquisition, LLC, as assignee of Chrysler First Financial Services Corporation.

Donald H. Oggs, Sweetwater, Tennessee, pro se appellee.

**OPINION**

*I. Background*

Donald H. Oggs and Chrysler First Financial Services Corporation ("Chrysler") entered into a contract designated "Variable Rate Personaline Credit Agreement" ("the loan agreement"), pursuant to which Mr. Oggs was allowed a $5,000 line of credit and the right to advances of funds from Chrylser and in return, agreed to repay all advances made, along with specified finance charges. The agreement further provided that Mr. Oggs' failure to make any minimum payment when due would constitute a default of the agreement, authorizing Chrysler to demand payment of all monies

due under the agreement along with accrued finance charges and reasonable attorney's fees. Later, this loan agreement was sold and assigned, first to NationsCredit Consumer Corporation, then to the Cadle Company, and finally, to the appellant, C & W Asset Acquisition, LLC ("C & W").

In October of 2004, C & W sued Mr. Oggs in the Circuit Court for Monroe County averring that Mr. Oggs had failed to repay funds advanced to him under the loan agreement and that as of September 21, 2004, he was indebted to C & W in the amount of $2,981.09. The complaint sought judgment against Mr. Oggs in that amount, plus prejudgment interest and attorney's fees.

On November 1, 2004, Mr. Oggs, representing himself, filed an answer to C & W's complaint, denying that he owed the debt and stating that he had "no knowledge of the same."

Thereafter, C & W filed a request for admissions that called upon Mr. Oggs to admit certain factual matters. When Mr. Oggs did not file a response within thirty days of the date of service, C & W filed a motion for an order deeming the matters admitted pursuant to Tenn. R. Civ. P. 36. The trial court denied this motion and permitted Mr. Oggs to respond in court to the request for admissions.

After hearing proof in the case on April 7, 2006, the trial court entered an order in favor of Mr. Oggs. C & W filed a timely notice of appeal and a Tenn. R. App. P. 24(c)[1] statement of the evidence. The statement of the evidence was served on Mr. Oggs, but he did not file any objections. The statement of the evidence was not approved by the trial court, but was deemed approved pursuant to Tenn R. App. P. 24(f)[2].

## II. Issues

In this appeal, we review the following issues:

1) Does the evidence preponderate against the trial court's decision that C & W failed to carry its burden of proof?

2) Did the trial court err in not deeming admitted the averments in C & W's complaint because they were not denied by Mr. Oggs in his answer?

---

[1]Tenn. R. App. P. 24(c) provides in pertinent part that "[i]f no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available, the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection."

[2] Tenn. R. App. P. 24(f) provides in pertinent part that "[t]he trial judge shall approve the . . . statement of the evidence . . . as soon as practicable after the filing thereof or after the expiration of the 15-day period for objections by appellee, as the case may be, but in all events within 30 days after the expiration of said period for filing objections. Otherwise the . . . statement of the evidence . . . shall be deemed to have been approved and shall be so considered by the appellate court  . . . ."

3) Did the trial court err in not granting C & W's motion to have its request for admissions deemed admitted because of Mr. Oggs' failure to timely respond to such request?

4) Did the trial court err in not declaring that Mr. Oggs waived the affirmative defense of failure of consideration by not pleading it?

### III. Standard of Review

In a non-jury case such as this one, we review the record *de novo* with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law are accorded no presumption of correctness. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

### IV. Analysis

#### A. Preponderance of Evidence

The first issue we address is whether the evidence preponderates against the trial court's decision that C & W failed to carry its burden of proof. The proof adduced at trial consisted only of the testimony of a C&W case manager, exhibits to her testimony, and the testimony of Mr. Oggs. The brief statement of evidence filed by C & W provided in pertinent part as follows:

> On April 7, 2006, a non-jury trial was conducted before the Honorable John B. Hagler. After making preliminary statements, plaintiff called Ms. Kristi Knisley to the witness box. After first being sworn in Ms. Knisley testified that she was the account manager for C & W Asset Acquisitions, LLC who was the assignee and holder of a personal line of credit agreement between Mr. Oggs and Chrysler First Financial Services Corporation.
>
> . . .
>
> Ms. Knisley testified that the books and fee account records showed that defendant Donald Oggs had executed a personal line of credit agreement with a $5,000.00 credit line limit. The executed credit agreement was entered into evidence as Exhibit 1. On September 26, 1988, an initial $2,500.00 draw was made upon the line of credit. Subsequently, Mr. Oggs made several additional draws upon the line of credit along with making a series of minimum payments. The line of credit balance history which indicated the draws and payment history was admitted into evidence as Exhibit 3.

Ms. Knisley testified that on or about February 6, 1999 that Donald Oggs had made a $180.00 payment on the account. Again on May 1, 1999, the Cadle Company had received a $270.00 payment from Mr. Oggs. Copies of said checks were admitted into evidence as Exhibit 2. Ms. Knisley noted that both of Mr. Oggs' personal checks referred to the Nations Credit account number. No further payments were made by Mr. Oggs, despite repeated requests for payment by plaintiff.

Ms. Knisley testified that Mr. Oggs was in default of his agreement by failing to pay monthly payments as of April 7, 2005, Mr. Oggs owed a principal balance of $1,756.33 with accrued interest of $1,545.96 for a total of $3,302.27. This amount gives credit for Mr. Oggs' payments and takes into account the variable finance charge which fluctuates in relation to the 6-month certificate of deposit rate as published in the Federal Reserve Bulletin. Ms. Knisley also pointed out that the agreement which Mr. Oggs signed provided for the recovery of reasonable attorney fees after default.

The defendant chose not to ask questions of Ms. Knisley, and proceeded to testify on his own behalf. After first being duly sworn Mr. Oggs stated that he and his then wife had resided for a number of years in South Carolina until they divorced and he moved back to East Tennessee where he was from. Mr. Oggs testified that he had no recollection of this debt or receiving money from the line of credit, and thereby denied owing the plaintiff.

On cross examination and questioning of the Judge, Mr. Oggs admitted that it was his signature on the line of credit agreement (Exhibit 1) and that it appeared to be his signature on the two checks (Exhibit 2). He did not know who would have used his line of credit.

At the conclusion of the testimony Judge Hagler stated that in his opinion that he felt that the plaintiff had failed to carry its burden of proof. Specifically that court felt that there was no proof before the court that Mr. Oggs had received the money from the line of credit. According, the Court ordered that this case was to be dismissed for this reason.

In deciding this case, the trial judge was faced with conflicting testimony. C & W's account manager, who had no personal knowledge of the draws Mr. Oggs allegedly received and the payments he allegedly made on the account, testified as to the balance due based on a computer printout. The computer printout listed a series of twenty-five checks allegedly advanced to Mr. Oggs and a series of payments he allegedly made over a ten-year period beginning in 1988. C & W's

account manager testified to a balance of $3,302.27, as of April 7, 2005, but the computer printout alleged to be an accurate record of Mr. Oggs' account is dated November 20, 2003, and shows a balance of $2,174.84. Although the printout which is the basis of the account manager's testimony does not show any customer activity after November 10, 1998, C & W introduced two checks written by Mr. Oggs as payments on the account dated February 6, 1999, and May 1, 1999, which are not shown on the printout. Furthermore, C & W failed to introduce any checks it maintains were issued to Mr. Oggs as draws under the agreement, even though Mr. Oggs had denied the debt and did not recollect receiving money from the line of credit.

The testimony of C & W's account manager was countered by Mr. Oggs' testimony which, as set forth in C & W's own statement of the evidence, was that "he had no recollection of this debt or of receiving money from the line of credit and *thereby denied owing the plaintiff.*" (Emphasis added). The gist of this statement as we construe it is not that Mr. Oggs denied the debt *because* he did not recall it, but rather that he denied the debt *and* did not recall it. This construction is consistent with Mr. Oggs answer wherein he denied owing the debt and had no knowledge of it. It is important to note that the "debt" in this case is not a single advance but a series of twenty-five advances in the form of checks over a ten-year period. We bear in mind that the question before the trial court was whether Mr. Oggs currently owed the specific amount of $3,302.27, as claimed by C & W. The specific debt claimed by C & W was not established by the mere fact that Mr. Oggs had in the past received money and made payments pursuant to the loan agreement. The payments made by Mr. Oggs were an acknowledgment of debt only to the extent of those payments and are not properly construed to also be an acknowledgment of the specific debt claimed by C & W. In other words, it does not follow from the fact that Mr. Oggs repaid debt that he did not deny, that he also owes separate and additional debt that he does deny. Mr. Oggs did not deny that he had in the past transacted business pursuant to the loan agreement, but only that he did not owe the debt currently asserted by C & W. We do not agree that the trial court erred in finding that C & W failed to carry its burden of proof by introducing witness testimony which was based upon a deficient and incomplete record and pertained to transactions of which its witness had no personal knowledge.

The trial judge's decision necessarily involved making a credibility assessment of these two witnesses. It was a classic "she said - he said" situation with which trial courts are often faced. The trial judge believed Mr. Oggs' testimony to be more credible than the testimony of the account manager.

It is well-settled that a trial court's assessment of witness credibility is entitled to great weight on appeal because the trial court saw and heard the witness testify. *Town of Alamo v. Forcum-James Co.*, 327 S.W.2d 47, 49 (Tenn. 1959). As we have further noted, "[t]he trier of fact is free to believe or disbelieve all or part or none of a witnesses' testimony, even where the testimony is uncontradicted or is not directly impeached." *Cornell v. State*, 118 S.W.3d 374, 378 (Tenn. Ct. App. 2003), (citing *Blackmon v. Estate of Wilson*, 709 S.W.2d 596, 603 (Tenn. Ct. App. 1986)). The weight, faith and credit to be given to a witness' testimony lies with the trial judge in a non-jury case because the trial judge had an opportunity to observe the manner and demeanor of the witness. *Roberts v. Roberts,* 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991); *Weaver v. Nelms,* 750 S.W.2d 158,

160 (Tenn. Ct. App. 1987). We give great weight to a trial court's determinations of credibility. *Estate of Walton v. Young,* 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk,* 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000).

   The trial court was in the best position to evaluate the evidence, judge the credibility of the witnesses, and determine the contested factual issue of whether funds were advanced to Mr. Oggs. This is because the trial court is "able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility." *Harley v. Harrison,* No. M2005-02099-COA-R3-CV, 2006 WL 2644372, at * 3 (Tenn. Ct. App. Sept. 13, 2006) (citing *State v. Pruett,* 788 S.W.2d 559, 561 (Tenn. 1990)) (other citations omitted). Accordingly, we do "not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Harley,* 2006 WL 2644372, at * 3 (citing *Humphrey v. David Witherspoon, Inc.,* 734 S.W.2d 315, 316 (Tenn. 1987)) (other citations omitted). In this case, we will not second-guess the trial court's decision regarding witness credibility, as there is not clear and convincing evidence to the contrary.

   As the plaintiff, C & W had the burden of proof. The essential elements of a breach of contract claim, as we noted in *ARC LifeMed, Inc., v. AMC-Tennessee, Inc.,* 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (citing *Lifecare Ctrs. of Am., Inc. v. Charles Town Assoc.'s Ltd. Partnership, LPIMC Inc.,* 79 F.3d 496, 514 (6th Cir. 1996)), "include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." In order to prove nonperformance amounting to a breach of contract, C & W was required to prove that Mr. Oggs received the money that C & W claims was due and owing. The necessary implication of the trial court's finding that Mr. Oggs did not receive the money is that Mr. Oggs had no obligation under the loan agreement to repay the monies claimed, and his failure to do so did not amount to a breach of contract. Our review of the record does not persuade us that the evidence preponderates against this finding.

### B. Failure to Respond to Request for Admissions

   Next, C & W argues that the trial court erred in failing to deem as admitted those matters set forth in C & W's request for admissions because of Mr. Oggs' failure to respond to such request. Before the trial, C & W filed a request for admissions that called upon Mr. Oggs to admit the following:

> Please admit that you executed the variable rate PersonaLine Credit Agreement and Disclosure Statements, a copy of which is attached hereto as Exhibit A.
>
> Please admit that the Plaintiff is entitled to enforce the terms of said credit agreement.

Please admit that I have obtained money by drawing upon said credit agreement.

Please admit that I formerly resided in Columbia, South Carolina.

Please admit that on May 30, 1998, I notified Plaintiff's predecessor, Nations Credit, that I had moved to Sweetwater, Tennessee.

Please admit that balance history attached as Exhibit B reflects the charges and payments made to my credit agreement.

When Mr. Oggs did not file a response within thirty days of the date of service, C & W filed a motion for an order deeming that matter admitted pursuant to Tenn. R. Civ. P. 36. The trial court denied this motion and instead allowed Mr. Oggs to respond in court to the request for admissions.

In support of its argument that the trial court erred, C & W cites Tenn. R. Civ. P. 36.01, which provides that a matter included in a request for admissions "is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney . . . ." C & W appears to suggest that the matters in its request for admissions, if deemed admitted, establish its action for breach of contract. However, we find nothing in those matters set forth in C & W's request for admissions which, if held to be admitted by Mr. Oggs, constitute proof that he owes the $2,981 debt asserted by C & W.

For purposes of analysis, we will take it that Mr. Oggs admitted that he executed the loan agreement, that C & W is entitled to enforce the agreement, that Mr. Oggs obtained money under the agreement, that Mr. Oggs formerly resided in South Carolina, that Mr. Oggs notified C & W's predecessor that he had moved to Sweetwater, Tennessee, and that the "balance history attached as Exhibit B reflects the charges and payments made to [Mr. Oggs'] credit agreement." None of these statements constitutes evidence Mr. Oggs breached the loan agreement and owes C & W the debt claimed. The fact that Mr. Oggs executed an enforceable loan agreement with C & W and that he has in the past, obtained funds under the agreement did not prove that any debt incurred by him under the agreement remained unpaid. Obviously, Mr. Oggs' place of residency is irrelevant to the question of whether he owes C & W money under the agreement. And finally, the admission that the charges and payments were made to Mr. Oggs' account, as set forth in the account balance history, does not constitute an admission by Mr. Oggs that such charges and payments are an accurate record of advances he actually received or of payments he made. The statement of evidence states that at the hearing on C & W's motion for an order deeming admitted the matters not responded to in the request, the court permitted C & W "to respond in court to the request for admissions." It is unclear whether Mr. Oggs' response was made during the motion hearing in January of 2006 or at trial on April 7, 2006. If Mr. Oggs' responses were made at the hearing in January, we believe C & W had sufficient time before trial to pursue further discovery if it so desired

and was not prejudiced by the fact that Mr. Oggs did not respond within the time allotted under Rule 36.01. In any event, we need not determine whether the trial court erred in allowing Mr. Oggs to respond as it did because the probative value of the matters deemed admitted was inconsequential; therefore, any error committed by the trial court in this regard was harmless.

### *C. Failure to Plead Affirmative Defense*

Next, C & W contends that Mr. Oggs waived the issue of failure to receive consideration from the line of credit because he did not raise that issue prior to trial. C & W notes that failure of consideration is an affirmative defense that must be pled with specificity as required by Tenn. R. Civ. P. 8.03. That rule provides in pertinent part as follows:

> In a pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon to constitute . . . *failure of consideration* . . . and any other matter constituting an avoidance or affirmative defense.

(Emphasis added).

C & W maintains that Mr. Oggs' answer that he had no knowledge of the debt claimed and did not owe it was insufficient to satisfy the requirements of Rule 8.03 with respect to the affirmative defense of failure of consideration and as a result, that defense was waived and should not have been the basis of judgment in his favor. We disagree.

We note that Mr. Oggs appears before us as a pro se litigant and has been without the assistance of counsel throughout this case and therefore, we are compelled to apply a somewhat different standard in reviewing his pleadings than we would had he been represented by an attorney. Mr. Oggs, as a pro se litigant, is entitled to fair and equal treatment by the courts. We do not excuse Mr. Oggs, as a pro se litigant, from complying with the same substantive and procedural rules that represented parties are expected to observe. But we give pro se litigants, such as Mr. Oggs who is untrained in the law, a certain amount of leeway in drafting their pleadings and briefs. Accordingly, we measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers. We seek to give effect to the substance, rather than the form or terminology, of a pro se litigant's papers. *Young v. Barrow*, 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2004).

Tenn. R. Civ. P. 15.02 allows an issue not raised by the pleadings to be tried by implied consent, providing in pertinent part as follows:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the

evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

The statement of evidence shows that Ms. Knisley testified that Mr. Oggs received payments (consideration) under the loan agreement and neglected to repay same. Given Mr. Oggs' denial of any knowledge of the debt claimed, we believe C & W should have reasonably known that the issue of failure of consideration was before the court as a matter of necessity, and we find no prejudice to C & W as a result of Mr. Oggs' failure to comply with Rule 8.03. In any event, C & W raised no objection to the trial court's decision upon the ground that it was based upon an affirmative defense not raised in accordance with Rule 8.03, nor did C & W otherwise object to Mr. Oggs' failure to comply with that Rule, and it is well-settled that an issue not raised in the trial court will not be entertained on appeal. *In re Adoption of E.N.R.*, 42 S.W.3d 26, 32 (Tenn. 2001). Accordingly, C & W's argument as to this issue has been waived.

### *D. Deficiency of Answer*

The final issue presented in this case is whether the averments set forth by C & W in its complaint should be deemed admitted because not denied by Mr. Oggs in his answer. In this regard, C & W contends that Mr. Oggs' assertions in his answer that he did not owe the debt and had no knowledge of it are inadequate to deny the complaint's averments that Mr. Oggs was in default of the loan agreement and was indebted to C & W in the amount claimed.

As has been noted by the Supreme Court of this state, "[a] partial failure to answer fully, as by omitting answer to particular allegation, should be timely called to the attention of the Trial Court with request that the alleged fact be considered as admitted. Failure to answer should not be considered a substitute for evidence when first invoked on appeal." *Smith v. Smith*, 643 S.W.2d 320, 323 (Tenn. 1982), citing *Edwards v. Edwards*, 501 S.W.2d 283 (Tenn. Ct. App. 1973). There is no indication in the record before us that C & W ever requested that any matters averred in its complaint be admitted because not adequately addressed in the answer filed by Mr. Oggs. Therefore, we deem this issue waived and decline to consider the averments specified as evidence against Mr. Oggs.

### *V. Conclusion*

For the reasons stated herein, we affirm the judgment of the trial court. Costs of appeal are adjudged against the appellant, C & W Asset Acquisition, LLC.

_____
SHARON G. LEE, JUDGE